Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

STATE OF RHODE ISLAND

PROVIDENCE, SC                                                         SUPERIOR COURT

| | |
|---|---|
| The Bank of New York Mellon, f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A. As Trustee for the Benefit of the Certificateholders of Popular ABS, Inc., Mortgage Pass-Through Certificates Series 2006-A | : : : : : |
| Plaintiff, | : : |
| v. | : : |
| HIPOLITO SEMEDO, MARIA R. LOPES and ARTHUR WITTENBERG | : : : |
| Defendant. | : : |



**COMPLAINT TO QUIET TITLE
AND FOR DECLARATORY JUDGMENT**

Plaintiff The Bank of New York Mellon, f/k/a The Bank of New York as successor trustee for

JPMorgan Chase Bank, N.A., As Trustee for the Benefit of the Certificateholders of Popular ABS,

Inc., Mortgage Pass-Through Certificates Series 2006-A ("BONY as Trustee" as "Plaintiff")

brings this action against Defendants Hipolito Semedo ("Semedo"), Maria R. Lopes ("Lopes") and

Arthur Wittenberg ("Wittenberg") to quiet title to real estate located at 16 Dudley Street,

Pawtucket, Rhode Island (the "Property") R.I.G.L. § 34-16-4 and to obtain a declaratory judgment

pursuant to § 9-30-1 to strike a false Lis Pendens from the Pawtucket Land Evidence records.

**Parties**

1.      BONY as Trustee is a national bank organized and existing under the laws of the United

States of America with its main office at 400 South Hope Street, Los Angeles, CA 90071.

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

2.    Hipolito Semedo is an individual who, upon information and belief, resides at the Property.

3.    Maria R. Lopes is an individual who, upon information and belief, resides at the Property.

4.    Arthur Wittenberg is an individual who, upon information and belief, has a residential address of 701 Loyola Ave., Unit 5786, New Orleans, LA 70113

### Jurisdiction and Venue

5.    This Court has jurisdiction over this equitable matter pursuant to R.I. G.L. § 8-2-13

6.    Venue is proper where the subject Property is located in Pawtucket, in Providence County.

### Facts

7.    On November 3, 2005, Semedo and Lopes executed a mortgage (the "Mortgage") to secure the repayment of a $ 301,750.00 loan against the Property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), which was recorded with the Land Records on November 8, 2005 in Book L2520 at Page 63. A true and accurate copy of said Mortgage is attached hereto as **Exhibit A**.

8.    On or about July 31, 2009, MERS assigned the Mortgage to The Bank of New York as Trustee for Equity One, Inc. Mortgage Pass-Through Certificates Series 2006-A. A true and accurate copy of said assignment is attached hereto as **Exhibit B**.

9.    On or about December 31, 2009, The Bank of New York as Trustee for Equity One, Inc. Mortgage Pass-Through Certificates Series 2006-A assigned the Mortgage to BONY as Trustee. A true and accurate copy of said assignment is attached hereto as **Exhibit C**.

10.    Semedo and Lopes defaulted on the Mortgage by failing to make the payment due on or about December 1, 2021, and all subsequent payments.

11.    BONY as Trustee complied with the requirements of R.I. Gen. Laws § 34-27-3.2.

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 3 of 56 PageID #: 9

12. On or about January 11, 2023, PHH Mortgage Services ("PHH") agent for the Plaintiff, sent a notice of default ("Notice of Default") that strictly complied with the requirements of paragraph 22 of the Mortgage. A true and accurate copy of the Notice of Default is attached as **Exhibit D**.

13. On or about July 25, 2023, PHH sent a notice of default and mortgagees' right to foreclose and notice of availability of credit counseling ("3.1 Notice") to Semedo and Lopes in compliance with R.I. Gen. Laws § 34-27-3.1. A true and accurate copy of the 3.1 Notice is attached as **Exhibit E**.

14. On or about September 13, 2023, the Law Office of Korde and Associates, P.C., attorneys for Plaintiff, and agent for the holder of the Mortgage, mailed a notice ("Notice of Intent to Foreclose") by certified mail return receipt requested pursuant to R.I. Gen. Laws § 34-27-4, stating its intention to foreclose by sale under the power of sale contained in the Mortgage on . A true and accurate copy of the Notice of Intent to Foreclose is attached as **Exhibit F**.

15. Notices of the foreclosure sale were published on October 18, 2023 and October 25, 2023 in the Pawtucket Times and November 1, 2023 in the Blackstone Valley's Call & Times, in compliance with R.I. Gen. Laws §§ 34-11-22 and 34-27-4.

16. On November 9, 2023, BONY as Trustee foreclosed the Mortgage by exercising the statutory power of sale, the highest bidder being LOC Construction, LLC in the amount of $485,000.00.

17. On or about January 2, 2024, Wittenberg purportedly executed a document titled Lis Pendens and on that same date recorded it with the Land Records in Book L5051 at Page 172. A true and accurate copy of said Notice of Defects is attached hereto as **Exhibit G**.

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

18. The Lis Pendens asserts that a complaint related to title of the Property has been filed with the Superior Court of the State of Rhode Island, entitled "Arthur of the Family Wittenberg and Hipolto Semedo v. National City Mortgage d/b/a Commonwealth United Mortgage Company," claiming the lawsuit intends to terminate any interest the named defendants have in the Property.

19. No Complaint has been filed with the Superior Court, or any other court of competent jurisdiction associated with the Property.

20. Wittenberg has no connection to the Property or the Mortgage and thus lacks standing to make any claim to title of the Property.

21. LOC Construction, LLC has refused to complete the sale, where it cannot obtain title insurance due to the false and misleading Lis Pendens, executed and recorded months *after* the foreclosure sale, and claiming to relate to non-existent litigation.

22. BONY as Trustee requires clear title in order to proceed with foreclosing this long delinquent loan.

## COUNT I - QUIET TITLE

23. BONY as Trustee realleges the allegations set forth in paragraphs 1 through 22 above.

24. The Lis Pendens is without basis in law or fact, clouds title to the Property, and is an impediment to ensuring marketable and insurable title after foreclosure.

25. There is no litigation pending that relates to title of the Property.

26. Wittenberg is a stranger with no connection to the Property or Mortgage.

27. The Lis Pendens has created a cloud on title and BONY as Trustee is therefore entitled to an order striking the Lis Pendens from the Land Records and quieting title to the Property in favor of BONY as Trustee.

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

## COUNT II - DECLARATORY JUDGMENT

28.    BONY as Trustee realleges the allegations set forth in paragraphs 1 through 24 above.

29.    There are no active Complaints related to title of the Property filed in any Court.

30.    Wittenberg is a stranger to the Property and the Mortgage and has no interest in either, and would lack standing to file any such complaint related to the Property or the Mortgage.

31.    Wittenberg has a practice or pattern of filing similar frivolous Lis Pendens against properties he has no connection to.

32.    BONY as Trustee therefore seeks an order declaring the Lis Pendens is false and a cloud of title that should be stricken from the Land Records.


WHEREFORE, BONY as Trustee prays for relief herein as follows:

1.    A judgment declaring the Lis Pendens is false and improperly clouds title;

2.    A judgment declaring the Lis Pendens shall be stricken from the Land Records.

4.    A judgment quieting title to the Mortgage in favor BONY as Trustee and free and clear of any claims of Wittenberg.

5.    An injunction against Arthur Wittenberg from recording further purported Lis Pendens without prior authorization from the Superior Court finding a sufficient connection to the subject Property and that a non-frivolous complaint has been filed before or simultaneously with the request for Lis Pendens.

5.    Costs of this action.

6.    Such other and further relief which the Court deems just and proper under the circumstances.

5

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

The Bank of New York Mellon, f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., As Trustee for the Benefit of the Certificateholders of Popular ABS, Inc., Mortgage Pass-Through Certificates Series 2006-A
By its Attorney,

*/s/ Robert Durant, Jr.*
Robert Durant, Jr. #4279
LOCKE LORD LLP
2800 Financial Plaza
Providence, RI 02903
(401) 528-5855
Robert.Durant@Lockelord.com

Dated:   April 30, 2024

6

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

# EXHIBIT A

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Return To:
Popular Financial Services, LLC
301 Lippincott Drive,
Marlton, NJ 08053

Prepared By:
Delores Foy
301 Lippincott Drive
Marlton, NJ 08053

Bk L2520 Pg63   #54
11-08-2005 a 11:08a

———————[Space Above This Line For Recording Data]———————

# MORTGAGE

MIN 1000466-0000567743-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated     November 3, 2005     , together with all Riders to this document.
(B) "Borrower" is HIPOLITO P SEMEDO and MARIA R. LOPES

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.

00615598
RHODE ISLAND - Single Family - Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT WITH MERS                                    Form 3040  1/01 (rev. 11/02)
VMP®-6A(RI) (0208)
Page 1 of 15     MW 08/02     Initials:_____
    VMP MORTGAGE FORMS · (800)521-7291

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 9 of 56 PageID #: 15

Bk L2520 Pg64    #54

**(D) "Lender"** is Popular Financial Services, LLC

Lender is a Limited Liability Company
organized and existing under the laws of                    Delaware
Lender's address is 301 Lippincott Drive, Marlton, NJ 08053

**(E) "Note"** means the promissory note signed by Borrower and dated    November 3, 2005
The Note states that Borrower owes Lender Three Hundred One Thousand Seven Hundred
Fifty and no/100                                                                     Dollars
(U.S. $301,750.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than        December 1, 2035
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider                [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider [X] 1-4 Family Rider
[ ] VA Rider                 [ ] Biweekly Payment Rider           [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

00615598

-6A(RI) (0208)                    Page 2 of 15                              Initials:_____
                                                                Form 3040   1/01 (rev. 11/02)

*H.P.S.*

*M.R.Z.*

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 10 of 56 PageID #: 16

Bk L2520 Pg65 #54

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the COUNTY of PROVIDENCE :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION

Parcel ID Number:                                                  which currently has the address of
16 DUDLEY STREET                                                                      [Street]
Pawtucket                                        [City], Rhode Island 02860-          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

00615598

-6A(RI) (0208)                            Page 3 of 15          Initials:_____          Form 3040   1/01 (rev. 11/02)

*H. P. S.*

*M. R. L.*

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS   Document 3   Filed 10/25/24   Page 11 of 56 PageID #: 17

Bk L2520 Ps66  #54

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payment are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

00615598

-6A(RI) (0208)          Page 4 of 15          Initials: _____
                                              Form 3040   1/01 (rev. 11/02)

*H. P. S.*

*M. R. 2.*

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Bk L2520 Pg67   #54

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

00615598

-6A(RI) (0208)                              Page 5 of 15                    Initials: _____          Form 3040   1/01 (rev. 11/02)

$\mathcal{H} \cdot \mathcal{P} - \mathcal{S} \cdot$

$\mathcal{M} \cdot \mathcal{R} \cdot \mathcal{Q} \cdot$

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS     Document 3     Filed 10/25/24     Page 13 of 56 PageID #: 19

Bk L2520 Pg68 #54

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

00615598

-6A(RI) (0208)          Page 6 of 15          Initials:_____          Form 3040   1/01 (rev. 11/02)

*H P-S.*

*M · R. 2.*

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Bk L2520 Pg69   #54

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

00615598

-6A(RI) (0208)                 Page 7 of 15                 Initials: _____                 Form 3040   1/01 (rev. 11/02)

Bk L2520 Pg70 #54

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

00615598

(VMP)-6A(RI) (0208)                    Page 8 of 15                    Initials:_____                    Form 3040   1/01 (rev. 11/02)

*H. P. S*
*M. P. L*

Case Number: PC-2024-02298
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 16 of 56 PageID #: 22

Bk L2520 Pg75  #54

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

**25. Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

00615598

-6A(RI) (0208)                     Page 13 of 15                     Initials: _____      Form 3040   1/01 (rev. 11/02)

*H.P.S.*

*M. R. L.*

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 17 of 56 PageID #: 23

Bk L2520 Ps76 #54

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
HIPOLITO P SEMEDO                    -Borrower

_____ (Seal)
MARIA R. LOPES                       -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                                 -Borrower

00615598

-6A(RI) (0208)          Page 14 of 15          Form 3040  1/01 (rev. 11/02)

Case Number: PC-2024-02294
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Bk L2520 Pg77 #54

STATE OF RHODE ISLAND,                                      *Providence* County ss:

On this    3rd    day of    November, 2005        , in    Cranston        ,
in said County, before me personally appeared HIPOLITO P SEMEDO and MARIA R. LOPES

each and all to me known and known to me to be the person(s) executing the foregoing instrument and
acknowledged said execution to be his/her/their free act and deed.

Notary Public

My Commission
Expires:
12/24/2008

00615598

-6A(RI) (0208)                    Page 15 of 15              Initials: _____

                                                            Form 3040   1/01 (rev. 11/02)

Case Number: PC-2024-02294
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 19 of 56 PageID #: 25

Bk L2520 Pg78 #54

## EXHIBIT "A"

That certain lot or parcel of land with all the buildings and other improvements thereon, situated on the southerly side of Dudley Street in the City of Pawtucket, laid out and designated as lot numbered five (5) on that plat of land entitled, "Conant Plat No. 2 Situated on Main St. Pawtucket, R. I . Jan. 20, 1885", which said plat is on file in the office of the Recorder of Deeds in said City of Pawtucket on Plat Card 200.

H·P·S,
M· R· L·

Bk L2520 Pg78 #54

Case Number: PC-2024-02394
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS   Document 3   Filed 10/25/24   Page 20 of 56 PageID #: 26

Bk L2520 P979 #54

# ADJUSTABLE RATE RIDER

### (LIBOR Index - Rate Caps)

MIN 1000466-0000567743-1

THIS ADJUSTABLE RATE RIDER is made this ____3rd____ day of November, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

Popular Financial Services, LLC

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

16 DUDLEY STREET                  , Pawtucket                  , RI 02860-
                                          [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of ____7.6800____ %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of   December, 2007   and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date, "

00615598

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family - Freddie Mac Modified Instrument

MW 05/00
Page 1 of 4                                                                                         Initials:

(2/28 & 3/27 LIBOR ARM RIDER)
3192-815R
JB 050006 07/21/00

*H .P.S .*
*M. R. Z.*

Bk L2520 Ps80   #54

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index,"

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and One / Half           percentage points (           6.5000           %) to the Current Index. The Note Holder will then round the result of this addition to the next highest one-eighth of one percentage point (0. 125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than           10.6800   % or less than           7.6800           %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one and one half  percentage points (1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than           13.6800           % or less than           7.6800           % over the life of the loan.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Initials:

00615598

(2/28 & 3/27 LIBOR ARM RIDER)          Page 2 of 4

3192-815R
JB 050007 07/20/00

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Bk L2520 Pg81   #54

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials:

00615598                                              Page 3 of 4

(2/28 & 3/27 LIBOR ARM RIDER)
3192-815R
JB 050008 07/21/00

Case Number: PC-2024-02898
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 23 of 56 PageID #:
29

Bk L2520 Pg82 #54

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
HIPOLITO P SEMEDO                -Borrower

_____ (Seal)
MARIA R. LOPES                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

00615598

Page 4 of 4

(2/28 & 3/27 LIBOR ARM RIDER)
3192-815R
JB 050009 07/21/00

Case Number: PC-2024-02598
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS     Document 3     Filed 10/25/24     Page 24 of 56 PageID #: 30

Bk L2520 Pg83 #54

# 1-4 FAMILY RIDER
## (Assignment of Rents) MIN 1000466-0000567743-1

THIS 1-4 FAMILY RIDER is made this        3rd  day of   November, 2005                ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
Popular Financial Services, LLC

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:
16 DUDLEY STREET                   ,Pawtucket                  ,RI 02860-
                                [Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

00615598

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01   MW 11/04

VMP-57R (0411)
Page 1 of 3          Initials:_____
VMP Mortgage Solutions, Inc.
(800)521-7291

*H.P.S.*
*M.R.Z.*

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Bk L2520 Pg84    #54

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

00615598

VMP-57R (0411)                      Page 2 of 3                    Initials: _____

                                                                  Form 3170 1/01

H.P.S.
M.R.Z.

Case Number: PC-2024-02598
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 26 of 56 PageID #: 32

Bk L2520 Pg85 #54

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)          _____ (Seal)
HIPOLITO P SEMEDO          -Borrower     MARIA R. LOPES              -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                -Borrower

00615598
VMP-57R (0411)              Page 3 of 3              Form 3170 1/01

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

# EXHIBIT B

Case Number: PC-2024-12398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 28 of 56 PageID #: 34

BK L3049 PG262 #89
08-12-2008 @ 12:15p

## ASSIGNMENT OF MORTGAGE

Mortgage Electronic Registration Systems, Inc., with a mailing address of Box 2026, Flint, MI 48501 ("Assignor"), the holder of a certain mortgage hereinafter mentioned, for consideration paid, the receipt whereof is hereby acknowledged, hereby assigns to The Bank of New York as Trustee for Equity One Inc. Mortgage/pass through certificate series #2006-A having an address of c/o Popular Mortgage, 121 Woodcrest Road, Cherry Hill, NJ 08003 ("Assignee") all Assignor's right, title and interest in and to the following:

Mortgage from Hipolito P. Semedo and Maria R. Lopes to Mortgage Electronic Registrations Systems, Inc., as nominee for Popular Financial Services, LLC dated November 3, 2005 and recorded with the Record of Land Evidence of the City of Pawtucket, County of Providence, State of Rhode Island in Book 2520, Page 63.

The property is located at 16 Dudley Street, Pawtucket, RI

Together with all the indebtedness currently due and to become due under the terms of any Promissory Note or evidence of indebtedness secured thereby.

To have and to hold the same unto the Assignee and to the successors, legal representatives and assigns of Assignee forever.

THIS ASSIGNMENT IS WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, EITHER EXPRESS OR IMPLIED IN FACT OR IMPOSED BY LAW.

IN WITNESS WHEREOF, the undersigned has caused this Assignment to be executed by its duly authorized representative _31_ day of _Oul_, 2008.

Mortgage Electronic Registration Systems, Inc.

By: _____
Doug Battin
Vice President

STATE OF NEW JERSEY
COUNTY OF CAMDEN

In _Camden City_ on the _31_ day of _Jul_, 2008, before me personally appeared Doug Battin, the Authorized Representative of Mortgage Electronic Registration Systems, Inc., to me known and known by me to be the party executing the foregoing instrument, and he/she acknowledged said instrument by him/her executed to be his/ her free act and deed, and the free act and deed of Mortgage Electronic Registration Systems, Inc.

_____
Notary Public
Printed Name: _____ JOSEPH J. IACOVELLI
My Commission Expires: _____ NOTARY PUBLIC OF NEW JERSEY
Commission Expires 4/3/2012

CITY OF PAWTUCKET

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

# EXHIBIT C

Case Number: PC-2024-12294
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 30 of 56 PageID #: 36

BK L3117 P9149 #10
03-19-2009 a 09:45a

## ASSIGNMENT OF MORTGAGE

The Bank of New York as Trustee for Equity One Inc. Mortgage/pass through certificate series #2006-A, with a mailing address of c/o Popular Mortgage, 121 Woodcrest Road, Cherry Hill, NJ 08003 ( Assignor ), the holder of a certain mortgage hereinafter mentioned, for consideration paid, the receipt whereof is hereby acknowledged, hereby assigns to The Bank of New York Mellon f/k/a The Bank of New York as successor to JPMorgan Chase Bank, N.A., as trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2006-A having an address of c/o Litton Loan Servicing, LP, 4828 Loop Central Drive, Houston, TX ( Assignee ) all Assignor s right, title and interest in and to the following:

Mortgage from Hipolito P. Semedo and Maria R. Lopes to Mortgage Electronic Registration Systems, Inc. dated November 3, 2005 and recorded with the Record of Land Evidence of the city/town of Pawtucket, County of Providence, State of Rhode Island in Book 2520, Page 63.

The property is located at 16 Dudley Street, Pawtucket RI 02860

Together with all the indebtedness currently due and to become due under the terms of any Promissory Note or evidence of indebtedness secured thereby.

To have and to hold the same unto the Assignee and to the successors, legal representatives and assigns of Assignee forever.

THIS ASSIGNMENT IS WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, EITHER EXPRESS OR IMPLIED IN FACT OR IMPOSED BY LAW.

IN WITNESS WHEREOF, the undersigned has caused this Assignment to be executed by its duly authorized representative 12 day of MARCH , 2009.

The Bank of New York as Trustee for Equity One Inc. Mortgage/pass through certificate series #2006-A

By: _____
Name: Diane Dixon
Its: Assistant Vice President

Litton Loan Servicing LP  Attorney-In-Fact  The Bank of New York Mellon f/k/a The Bank of New York

STATE OF TX
COUNTY OF Harris

In TX , on the 12 day of MARCH , 2009, before me personally appeared Diane Dixon , the Authorized Representative of The Bank of New York as Trustee for Equity One Inc. Mortgage/pass through certificate series #2006-A, to me known and known by me to be the party executing the foregoing instrument, and he/she acknowledged said instrument by him/her executed to be his/ her free act and deed, and the free act and deed of The Bank of New York as Trustee for Equity One Inc. Mortgage/pass through certificate series #2006-A.

Notary Public
Printed Name: Brenda McKinzy
My Commission Expires:_____

BRENDA MCKINZY
Notary Public, State of Texas
My Commission Expires
December 05, 2010

CITY OF PANTUCKET

Case Number: PC-2024-02294
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS     Document 3     Filed 10/25/24     Page 31 of 56 PageID #: 37

# EXHIBIT D

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra B.

PHH Mortgage Services
PO Box 9117
Temecula, CA  92589-9117

||||||||| ||||||| || ||||| ||||| ||||| ||||| ||||| |||||
2376354618

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Payments to:
PHH Mortgage Services
PO Box 24738
Mail Stop SV19
West Palm Beach, FL 33416

20230112-206

Send Correspondence to:
PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

|¦||¦|·¦·|¦|·|¦·¦¦·¦|¦||¦¦¦¦·|¦·¦¦||¦¦¦|¦¦·|¦|·¦¦·¦¦|¦||¦·
HIPOLITO SEMEDO
16 DUDLEY ST APT 1
PAWTUCKET, RI 02860-4813

# If you are experiencing a hardship as a result of COVID-19, please contact us immediately at 1-800-936-8705 or covid19assistance@mortgagefamily.com or via https://www.mortgagequestions.com/coronavirus so we can review your available options.



XC321



# newrez

C/O PHH Mortgage Services                                    Tel: 888-820-6474
P.O. Box 24738
West Palm Beach, FL 33416                                    Fax: 856-917-8300

---

01/11/2023                                    Account Number: ▮▮▮▮▮▮▮

HIPOLITO SEMEDO                               Sent Via First-Class Mail®
MARIA LOPES
16 DUDLEY ST APT 1
PAWTUCKET, RI 02860-4813                      Property Address:
                                              16 DUDLEY ST
                                              PAWTUCKET, RI 02860

## NOTICE OF DEFAULT

### AVISO IMPORTANTE PARA PERSONAS QUE HABLAN ESPAÑOL

Esta notificación es de suma importancia. Puede afectar su derecho a continuar viviendo en su casa. Si no entiende su contenido, obtenga una traducción inmediatamente o contáctenos ya que tenemos representantes que hablan español y están disponibles para asistir.

### SPECIAL NOTICE IN THE EVENT YOU HAVE FILED BANKRUPTCY

If you have received an Order of Discharge in a Chapter 7 case filed under the Bankruptcy Code of the United States, this Notice is not intended as an attempt to collect any debt from you personally. If you have received an Order of Discharge in a Chapter 11, 12 or 13 bankruptcy case, this Notice is not an attempt to collect a pre-petition debt pursuant to a completed and confirmed Bankruptcy Plan. If the foregoing applies to you, this Notice is sent to you only as a preliminary step to an "In Rem" foreclosure on the mortgage against the above-referenced property. Provisions may be contained within the mortgage/deed of trust that require notice prior to foreclosure. As such, this is not an attempt to assert that you have any personal liability for this debt contrary to any entered Bankruptcy Order of Discharge.

In addition, if you have recently filed a petition under the Bankruptcy Code, this Notice has been sent to you because we have not been notified of your bankruptcy case. If the foregoing applies to you, it is **IMPORTANT** that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the bankruptcy chapter number under which you have filed.

---

Case Number: PC-2024-12294
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 46014
Reviewer: Alexandra



# newrez

C/O PHH Mortgage Services                                                                    Tel: 888-820-6474
PO Box 24738
West Palm Beach, FL 33416                                                          Fax: 856-917-8300

---

Mortgage payments on the above referenced account are past due, which has caused a default under the terms of the Mortgage or Deed of Trust (hereinafter, "Security Instrument"). As of 01/11/2023, the following amounts are past due:

| | | |
|---|---|---|
| Next Payment Due Date: | | 12/01/2021 |
| Total # of Monthly Payments Due: | | 14 |
| Total Monthly Payments Due: | | $16,594.98 |
| Late Charges: | | $116.15 |
| Other Charges: | Fees/Expenses: | $1,993.14 |
| | Uncollected NSF Fees: | $0.00 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$18,704.27** |

This amount represents the total amount required to bring the account current as of the date of this letter. If other amounts are advanced on the account or if the next payment due date occurs on or before the submission of the total amount required to cure the default, those amounts will remain on the account until paid.

In order to cure the default, payment for the entire total amount past due, plus any amount(s) becoming due in the interim, must be received on or before 02/15/2023, via the addresses or methods listed on the payment remittance information section included in this notice. Please be aware, after acceleration of the debt, there may be expenses and attorney's fees and costs incurred by us to enforce the terms of the Security Instrument or mortgage agreement, in addition to the overdue amount on the mortgage account. You have the right to reinstate the account after acceleration subject to the terms of the mortgage subject to applicable state law. Any payment to reinstate the mortgage after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received after acceleration that are less than the amount required to reinstate the mortgage may be returned, and may not stop any foreclosure proceedings already begun on the Property. If certain amounts are not collected to reinstate the account, then those amounts will remain due on the account until paid.

Failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property. Upon acceleration, the total obligation will be immediately due and payable without further demand. In foreclosure proceedings, we are entitled to collect the total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable attorney's fees and costs. A customer has the right to reinstate the account after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale.

If the default is not cured on or before the date specified above, PHH Mortgage Services at its option, may require immediate payment in full of all sums secured by the Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. PHH Mortgage Services shall be entitled to collect all expenses incurred in pursuing the remedies provided under applicable law, including, but not limited to, reasonable attorneys' fees and costs of title evidence. If PHH Mortgage Services invokes the STATUTORY POWER OF SALE, PHH Mortgage Services shall mail a copy of a notice of sale to the customer and to other persons in a manner prescribed by applicable law.

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601449
Reviewer: Alexandra S.

# newrez

C/O PHH Mortgage Services                                                   Tel: 888-820-6474
PO Box 24738
West Palm Beach, FL 33416                                                   Fax: 856-917-8300

---

We will work with bankruptcy lawyers, foreclosure defense lawyers, housing counselors, and other authorized representatives of our customers. However, we will only release information once proper **written authorization** has been obtained, as required by law.

In addition, a U.S. Department of Housing and Urban Development ("HUD") counseling agency may be able to provide assistance. To locate the HUD-approved counseling agency, call the HUD Housing Counseling Service at 800.569.4287 or consult HUD's website at www.HUD.gov.

**Attention Servicemembers and Dependents:** Servicemembers on "active duty" or "active service", or a spouse or dependent of such a service member, may be entitled to certain legal protections under the federal Servicemembers Civil Relief Act (50 U.S.C. App.§§ 3901) ("SCRA") regarding the service member's interest rate and foreclosure protections. SCRA and certain state laws provide important protections for you. If you are currently in the military service, or have been within the last twelve (12) months, please notify PHH Mortgage Services immediately. Servicemembers and dependents with questions about SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at  https://legalassistance.law.af.mil/. Military OneSource is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under SCRA, please go to www.militaryonesource.mil/legal or call 800.342.9647 (toll-free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website. Homeowner counseling is also available at HUD-certified housing counselors http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm).

If the mortgage account cannot be brought current, we should be contacted immediately to discuss possible alternatives to foreclosure. We want to help remedy the delinquent status of this account and would like to discuss alternatives that might be available. While our primary objective is the collection of past due amounts on the account, we want to work to find the best available alternative to bring the account current.

Please visit our website at www.MortgageQuestions.com where the account can be reviewed and financial information entered.

For any questions or concerns, we can be reached toll-free at 888.820.6474. We are available Monday through Friday from 8:00 AM to 9:00 PM and Saturday from 8:00 AM to 5:00 PM ET.

Sincerely,
Loan Servicing

**Toll Free Phone: 888.820.6474**

**ADDRESS WRITTEN CORRESPONDENCE TO:**
PHH Mortgage Services
Post Office Box 66002
Lawerenceville NJ, 08648



www.MortgageQuestions.com                                                   XC321

Page 3 of 4                                                                  2376354618

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 46014
Reviewer: Alexandra

# newrez

C/O PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

Tel: 888-820-6474

Fax: 856-917-8300

## Payment Remittance Information

| Payment Methods | |
|---|---|
| Always include the account number with the payment. Make checks payable to PHH Mortgage Services . | |
| MoneyGram®<br>Receive Code: 7440<br>City: Mount Laurel<br>State: NJ<br>Account: ▮▮▮▮▮<br>Payable to: PHH Mortgage Services | **Regular Mail**<br>PHH Mortgage Services<br>P.O. Box 371458<br>Pittsburgh, PA 15250-7458 |
| Western Union Quick Collect<br>Code City: PHHUS<br>State: NJ<br>Reference: Account ▮▮▮▮▮ | **Overnight Mail**<br>PHH Mortgage Services<br>Attn: P.O. Box 371458<br>500 Ross Street 154-0470<br>Pittsburgh, PA  15250 |
| Pay online: Log in to www.MortgageQuestions.com to make a payment. | |

Case Number: PC-2024-02396
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

PHH Mortgage Services
PO Box 24738
West Palm Beach, FL 33416

0-814-CNK71-0000002-001-01-000-000-000-000





HIPOLITO SEMEDO
MARIA R LOPES
16 DUDLEY ST
PAWTUCKET RI 02860-4813

Case Number: PC-2024-02306
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 38 of 56 PageID #: 44

# EXHIBIT E

Case Number: PC-2024-02396
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4564409
Reviewer: Alexandra R.

# newrez



C/O PHH Mortgage Services | PO Box 24738 | West Palm Beach FL 33416 | Tel: 1-888-820-6474 | Fax: 1-856-917-8300

July 25, 2023

Account Number: ███████



HIPOLITO SEMEDO
MARIA R LOPES
16 DUDLEY ST
PAWTUCKET, RI 02860

**Property Address:**
16 DUDLEY ST
PAWTUCKET RI 02860

0-814-CNK71-0000002-001-02-000-000-000-000

# newrez

C/O PHH Mortgage Services | PO Box 24738 | West Palm Beach FL 33416 | Tel: 1-888-820-6474 | Fax: 1-856-917-8300

---

🗶 FORM 34-27-3.1

---

### NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE AND NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

---

This Notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.1 of The Rhode Island Mortgage Foreclosure and Sale Act.

### NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE

Re: ████████

The mortgagee named below ("Mortgagee") hereby notifies you that you are in default on your mortgage. If you fail to remedy this default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan referenced in this Notice.

### NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

Housing counseling services are available to you at no cost. Counseling services that can help you understand your options and provide resources and referrals that may assist you in preventing foreclosure are available from mortgage counseling agencies approved by the United States Department of Housing and Urban Development (HUD). You can locate a HUD-approved mortgage counseling agency by calling HUD's toll-free telephone number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov. The TDD number is 1800-877-8339. Foreclosure prevention counseling services are available free of charge through HUD's Housing Counseling Program.

HUD Approved Housing Counseling Agencies in Rhode Island may be found at this link http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI. If you do not have internet access, call the toll- free number above and request a printed list.

Mortgagee: The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2006-A

Mortgagee Address: Attn: CT MBS Group 525 William Penn Place 7th Floor, Pittsburgh, PA 15259

Mortgagee Authorized Representative: PRAMOD SINGH

Date Mailed: 07/25/2023

Contact Information for Mortgagee Authorized Representative:

Telephone: 888-820-6474 (Provide toll free number if available)

Email:

---

Case Number: PC-2024-02298
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4596409
Reviewer: Alexandra R.

# newrez

C/O PHH Mortgage Services | PO Box 24738 | West Palm Beach FL 33416 | Tel: 1-888-820-6474 | Fax: 1-856-917-8300

## ⚜ FORMULARIO 34-27-3.1

> ### AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECAR10 A EJECUTAR LA HIPOTECA Y NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN HIPOTECARIA

Se le proporciona esta notificación para informarle acerca del amparo que ofrecen las Leyes Generales de Rhode Island § 34-27-3.1 de The Rhode Island Mortgage Foreclosure and Sale Act (Ley sobre Ejecución de Hipotecas y Remates de Rhode Island).

### AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA

Asunto: ▓▓▓▓▓▓

Por medio del presente el acreedor hipotecario indicado abajo ("Acreedor hipotecario") le notifica que su hipoteca esta morosa. Si no puede solventar la situación, el Acreedor hipotecario tiene el derecho de ejecutar la hipoteca del inmueble que avala el préstamo hipotecario al cual se alude en el presente aviso.

### NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN IPOTECARIA

**Se encuentran a disposición servicios de orientación sobre vivienda sin costo adicional.** Los servicios de orientación pueden ayudarle a comprender las opciones de las que dispone, así como también ofrecerle recursos y referencias que podrían contribuir a evitar la ejecución de la hipoteca. Dichos servicios los ofrecen agencias de orientación hipotecaria aprobadas por el United States Department of Housing and Urban Development (Departamento de Vivienda y Desarrollo Urbano de EE.UU., HUD, por sus siglas en inglés). Puede localizar agencias de orientación hipotecaria aprobadas por HUD llamando al número gratuito de dicho departamento al 1-800-569-4287, o ingresando a la página en Internet de HUD www.hud.gov El número del dispositivo de comunicación para sordos (TDD, por sus siglas en inglés) es 1-800877-8339.. Los servicios de orientación para prevenir la ejecución de hipotecas se ofrecen sin costo alguno mediante el Programa de Orientación para la Vivienda de HUD.

**Agencias de asesoría aprobadas por el Departamento de Vivienda y Desarrollo Urbano en Rhode Island pueden ser encontradas en este lugar :**
**http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI. Si usted no tiene acceso a internet, llame a la línea de teléfono gratuita que aparece arriba para solicitar una lista impresa.**

Acreedor hipotecario: The Bank of New York Mellon f/k/a The Bank of New York as successor trustee for JPMorgan Chase Bank, N.A., as Trustee for the benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2006-A

Dirección del Acreedor hipotecario: Attn: CT MBS Group 525 William Penn Place 7th Floor, Pittsburgh, PA 15259

Representante autorizado del Acreedor hipotecario: PRAMOD SINGH

Fecha de envio por correo: 07/25/2023

Información de contacto del representante autorizado del Acreedor hipotecario:

Teléfono: 888-820-6474 (Proporcione un número gratuito si to time)

# newrez

C/O PHH Mortgage Services | PO Box 24738 | West Palm Beach FL 33416 | Tel: 1-888-820-6474 | Fax: 1-856-917-8300

Correo electrónico:

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 43 of 56 PageID #: 49

# EXHIBIT F

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 43 of 56 PageID #: 49

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

5

PO BOX 501150
SAN DIEGO, CA 92150-1150



IMPORTANT INFORMATION
ENCLOSED

(11) 969 0024 8592 5729 6

**Mailed On:** 9/13/2023          **Order Number:** 0045732-01
**ClientID:** Korde  FC          **Reference Number:**   12-007194

Hipolito P. Semedo
16 Dudley Street
Pawtucket, RI 02860

 GenericAddressInsert.doc                                      Rev. 12/19/2018

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

## Korde & Associates, P.C.
Attorneys at Law

900 Chelmsford Street, Suite 3102
Lowell, Massachusetts 01851
Tel: (978) 256-1500 • Fax: (978) 256-7615

**Serving the States of:**

- Connecticut
- Maine
- Massachusetts
- New Hampshire
- Rhode Island
- Vermont

September 13, 2023

Hipolito P. Semedo
16 Dudley Street
Pawtucket, RI 02860

VIA FIRST CLASS MAIL &
CERTIFIED MAIL

RE:  Property Address: 16 Dudley Street, Pawtucket, RI 02860
Tax Parcel: 62/ / 0108/ /
Korde File No. 12-007194

### Notice of Intention to Foreclose Mortgage and
### Preserve Deficiency After Foreclosure of Mortgage

Dear Sir/Madam:

You are hereby notified of the Mortgage Holder's intent to commence a foreclosure of the property at 16 Dudley Street, Pawtucket, RI 02860. In the event that there is a deficiency resulting from said foreclosure, proceedings may be instituted against you for the purpose of collecting said deficiency.

Enclosed is a copy of the Mortgagee's Sale of Real Estate which sets forth the date and time of the foreclosure sale.

If you have any questions regarding this matter, please contact our office.

Very truly yours,

Korde & Associates, P.C.



12-007194 / FC02

Hours of Operation: 8:30am – 5:30pm, EST Monday thru Friday
www.logs.com/korde

Case Number: PC-2024-12294
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 46 of 56 PageID #: 52

## NOTICE TO SERVICEMEMBERS

A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.

Excerpt from Rhode Island General Laws Section 34-27-4:

(d) Foreclosure sales affecting servicemembers.-
    (1) The following definitions shall apply to this subsection and to subsection (c):
        (i) "Servicemember" means a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard and members of the National Guard or Reserves called to active duty.
        (ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the National Guard, or Reserves "active duty" means and includes service under a call to active service authorized by the President or the Secretary of Defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the President and supported by federal funds.

    (2) This subsection applies only to an obligation on real and related personal property owned by a service member that:
        (i) Originated before the period of the servicemember's military service or in the case of a member of the National Guard or Reserves originated before being called into active duty and for which the servicemember is still obligated; and
        (ii) Is secured by a mortgage or other security in the nature of a mortgage.

    (3) Stay of right to foreclose by mortgagee. – Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty



Case Number: PC-2024-02398
Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 47 of 56 PageID #: 53
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

(4) Stay of proceedings and adjustment of obligation. – In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i) Stay the proceedings for a period of time as justice and equity require; or

(ii) Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) Sale or foreclosure.- A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii) If made pursuant to an agreement of all parties.

(6) Penalties.- A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearings on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.



Case Number: PC-2024-02298
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

## MORTGAGEE'S SALE
16 Dudley Street, Pawtucket, RI 02860

The premises described in the mortgage from Hipolito P. Semedo and Maria R. Lopes dated November 3, 2005 and recorded in the Pawtucket Land Evidence Records at Book L2520, Page 63, as affected by a Loan Modification Agreement recorded in Said Land Evidence Records in Book 3228, Page 97, will be sold subject to all encumbrances and prior liens on November 9, 2023 at 3:00 PM on the premises, by virtue of the power of sale contained in the mortgage, the conditions of said mortgage having been broken.

$5,000.00 certified or bank check is required to bid. Other terms will be announced at the sale.

The Mortgagee hereby gives notice of its intention to bid at such sale or any postponement or adjournment thereof.

KORDE & ASSOCIATES, P.C.
Attorneys for the Holder of the Mortgage
900 Chelmsford Street
Suite 3102
Lowell, MA 01851
(978) 256-1500


12-007194



Case Number: PC-2024-02898
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

PO BOX 501150
SAN DIEGO, CA 92150-1150

IMPORTANT INFORMATION
ENCLOSED

(11) 969 0024 8592 5734 0

**Mailed On:** 9/13/2023          **Order Number:** 0045732-01
**ClientID:** Korde  FC          **Reference Number:**   12-007194

Maria R. Lopes
16 Dudley Street
Pawtucket, RI 02860

  GenericAddressInsert.doc                                              Rev. 12/19/2018

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.



# Korde & Associates, P.C.
## Attorneys at Law

900 Chelmsford Street, Suite 3102
Lowell, Massachusetts 01851
Tel: (978) 256-1500 • Fax: (978) 256-7615

**Serving the States of:**

- Connecticut
- Maine
- Massachusetts
- New Hampshire
- Rhode Island
- Vermont

September 13, 2023

Maria R. Lopes
16 Dudley Street
Pawtucket, RI 02860

VIA FIRST CLASS MAIL &
CERTIFIED MAIL

RE:     Property Address: 16 Dudley Street, Pawtucket, RI 02860
        Tax Parcel: 62/ / 0108/ /
        Korde File No. 12-007194

### Notice of Intention to Foreclose Mortgage

Dear Sir/Madam:

You are hereby notified of the Mortgage Holder's intent to commence a foreclosure of the property at 16 Dudley Street, Pawtucket, RI 02860.

Enclosed is a copy of the Mortgagee's Sale of Real Estate which sets forth the date and time of the foreclosure sale.

If you have any questions regarding this matter, please contact our office.

Very truly yours,

Korde & Associates, P.C.



12-007194 / FC02

Hours of Operation: 8:30am – 5:30pm, EST Monday thru Friday
www.logs.com/korde

Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

## NOTICE TO SERVICEMEMBERS

**A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.**

Excerpt from Rhode Island General Laws Section 34-27-4:

(d) Foreclosure sales affecting servicemembers.-
    (1) The following definitions shall apply to this subsection and to subsection (c):
        (i) "Servicemember" means a member of the Army, Navy, Air Force, Marine Corps, or Coast Guard and members of the National Guard or Reserves called to active duty.
        (ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the National Guard, or Reserves "active duty" means and includes service under a call to active service authorized by the President or the Secretary of Defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the President and supported by federal funds.

    (2) This subsection applies only to an obligation on real and related personal property owned by a service member that:
        (i) Originated before the period of the servicemember's military service or in the case of a member of the National Guard or Reserves originated before being called into active duty and for which the servicemember is still obligated; and
        (ii) Is secured by a mortgage or other security in the nature of a mortgage.

    (3) Stay of right to foreclose by mortgagee. – Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty



Case Number: PC-2024-02298
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS     Document 3     Filed 10/25/24     Page 52 of 56 PageID #:
58

or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

(4) Stay of proceedings and adjustment of obligation. – In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i) Stay the proceedings for a period of time as justice and equity require; or

(ii) Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) Sale or foreclosure.- A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii) If made pursuant to an agreement of all parties.

(6) Penalties.- A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearings on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.



Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

MORTGAGEE'S SALE
16 Dudley Street, Pawtucket, RI 02860

The premises described in the mortgage from Hipolito P. Semedo and Maria R. Lopes dated November 3, 2005 and recorded in the Pawtucket Land Evidence Records at Book L2520, Page 63, as affected by a Loan Modification Agreement recorded in Said Land Evidence Records in Book 3228, Page 97, will be sold subject to all encumbrances and prior liens on November 9, 2023 at 3:00 PM on the premises, by virtue of the power of sale contained in the mortgage, the conditions of said mortgage having been broken.

$5,000.00 certified or bank check is required to bid. Other terms will be announced at the sale.

The Mortgagee hereby gives notice of its intention to bid at such sale or any postponement or adjournment thereof.

KORDE & ASSOCIATES, P.C.
Attorneys for the Holder of the Mortgage
900 Chelmsford Street
Suite 3102
Lowell, MA 01851
(978) 256-1500


12-007194



Case Number: PC-2024-12298
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 54 of 56 PageID #: 60

# EXHIBIT G

Case Number: PC-2024-02399
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 55 of 56 PageID #: 61

Bk L5051 Pg172 #50
01-02-2024 a 02:44p

NOT AN OFFICIAL COPY    NOT AN OFFICIAL COPY

NOT AN OFFICIAL COPY    NOT AN OFFICIAL COPY

BOOK: _____    PAGE: _____

[Space Above This Line For Recording Data]

## NOTICE OF LIS PENDENS

Pursuant to Rhode Island General Statutes Title 34. Property § 34-28-11, notice is hereby given of a suit filed in the **SUPERIOR COURT STATE OF RHODE ISLAND** entitled,

"***ARTHUR OF THE FAMILY WITTENBERG, and HIPOLITO SEMEDO v. NATIONAL CITY MORTGAGE d/b/a, COMMONWEALTH UNITED MORTGAGE COMPANY***", *bearing*

*Case NO.* _____ , this proceeding will be filed. The object of which is to terminate any interest in which Defendant's may have in the property described below.

This suit affects the following described property:

A CERTAIN PORTION OF GROUND, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the STATE OF RHODE ISLAND, COUNTY OF PROVIDENCE, designated as:

> That certain lot or parcel of land, with all the buildings and improvements thereon, situated on the southerly side of Dudley Street, in the city of Pawtucket, in the state of Rhode Island, comprising the whole of Lot number five (5), on that plat of land entitled, "Conant Plat No. 2, situated on Main St. Pawtucket, R. I. Jan 28, 1885", with said plat on file in the office of the Recorder of Deeds in said City of Pawtucket on Plat Card 200.

PROPERTY ADDRESS:
16 Dudley Street
Pawtucket, RI

TOGETHER with all improvements thereon.

CITY OF PAWTUCKET

_____
Arthur Wittenberg

Case Number: PC-2024-02398
Filed in Providence/Bristol County Superior Court
Submitted: 4/30/2024 10:32 AM
Envelope: 4601409
Reviewer: Alexandra R.

Case 1:24-cv-00415-MSM-PAS    Document 3    Filed 10/25/24    Page 56 of 56 PageID #: 62

Bk L5051 Pg173 #50

N O T
A N
O F F I C I A L
STATE OF RHODE ISLAND C O P )Y
) ss:
COUNTY OF PROVIDENCE

N O T
A N
O F F I C I A L
C O P Y

N O T
A N

ON January 2, 2024, before me, Joselyn Torres , a notary public in and for said state personally appeared Arthur of the family Wittenberg, personally known to me (or proved to me based upon satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same in his signature on the instrument the person or entity on behalf of which they acted, executed the instrument.

Witness my hand and official seal

NOTARY PUBLIC
My commission expires August 7, 2027

[NOTARY SEAL]

